Whether the complainants have an easement of way over the land of the defendant, is a question which ordinarily should be determined by a court of law, but both parties prefer that the issue be settled in Chancery, and I proceed accordingly.
In 1910, the late Mrs. Catherine Peltz owned a considerable tract of land on the east side of Lyons Avenue, Newark, including three adjoining lots known as Nos. 323, 327 and 329. The Peltz house stood on No. 329. No. 327 was unused except for an old barn and a lane or driveway running from Lyons Avenue to the barn and lying within a few feet of the line of No. 329. No. 323 was also vacant land. People who wished to go from Lyons Avenue to some place or other back of the Peltz property, or to Willoughby Street, which ran at right angles with Lyons Avenue south of the Peltz tract, often walked up the lane and skirted around the barn, or else went along the lane fifty feet or so, and then diagonally to the right across the rear of No. 323, and so to Willoughby Street. Such was the situation when, in 1910, Mr. and Mrs. Weber, complainants' parents, bought lot No. 323 and erected, close to the line of No. 327, a dwelling house which became their home. This is the property owned by complainants by inheritance from their parents. Mr. Weber was in the milk business and had a horse and wagon with which he served his customers. He built a wagon shed in the rear of his dwelling and also a fence around his lot; and in the fence, between his lot and No. 327, just in back of his house, he set a gate. A *Page 546 
few years later, his sons bought an automobile and erected a garage at the rear of his lot. The Webers customarily reached the wagon shed and the garage by way of the driveway on No. 327 and across the unused part of that lot, to the gate in their fence. Mr. Weber, whenever he found it convenient, also left his wagon in the vacant lot, No. 327, instead of bringing it through the gate.
In 1922, Mrs. Peltz conveyed the vacant lot between her home and the complainants' land, to one Siegel, and after certain mesne conveyances title thereto vested in the defendant company. In her conveyance to Siegel, Mrs. Peltz reserved the use of the driveway in order to reach a garage which she had erected in back of her own house. The defendant, in 1927, erected a small building on the front of its land adjacent to complainants' house. Meanwhile, and until the spring of the present year, the complainants continued their use of No. 327 for access to their garage. Last spring, the defendant commenced to enlarge its building to such an extent as would prevent complainant's use of the land. Thereupon they brought this suit, claiming a prescriptive right of way.
The complainants have proved an open, notorious and continuous user for more than twenty years, but in order to establish an easement by prescription, it must appear that the user was under a claim of right and was adverse to the owners of the soil. The Court of Errors and Appeals, in Carlisle v. Cooper, 21 N.J. Eq. 576
(at p. 596), held that "an user to be adverse must be under a claim of right, with such circumstances of notoriety as that the person against whom the right is exercised may be made aware of the fact, so as to enable him to resist the acquisition of such right before the period of prescription has elapsed." Generally, proof of an open, notorious and continuous user for the prescriptive period, gives rise to a presumption of fact that it was adverse and under a claim of right and throws upon the opposite party the burden of showing that such user was by permission expressed or implied. Clement v. Bettle,65 N.J. Law 675. On the other hand, our Supreme Court (Gummere, C.J., Swayze and Trenchard, JJ.) in Holmes v. Murphy, *Page 547 1 N.J. Mis. R. 126, dealing with an alleged way across vacant land, said, "Where a party crosses over the land of another with such frequency as to indicate that he has a way over it, the presumption is that he is using the way with the permission of the owner and not adversely to him. * * * To succeed in establishing a way against the owner, it must be proved that the user was adverse." The solution of any seeming conflict between these decisions is suggested by our leading case of Cobb v.Davenport, 32 N.J. Law 369, which was concerned with a claim to a fishing right in Green Pond. Mr. Justice Depue (at p. 387), wrote that "the user must be adverse, and not by sufferance. It must be contrary to the interests of the owner, and under a claim of right against the true owner, and by his acquiescence, he knowing of such use, and not objecting thereto; and the user must be of such a nature as to afford an indication to the owner that a right is claimed against him. (Citing authorities.) Where the thing prescribed for is an easement, such as a right of way, or of overflowing lands, there is little difficulty in applying the rules of adverse possession of a corporeal hereditament, to the determination of the question whether the user is adverse, because of such use or enjoyment being a direct and palpable interference with the owner in his property, and contrary to his interest. But where the right claimed is a mere profit aprendre, as hunting, hawking, or fishing, it is difficult to bring it within those rules, and especially so where the right claimed is of hunting over wild lands, or fishing in secluded waters, when the owner does not himself use the game or fish for a pecuniary profit, but suffers the public in general to hunt and fish without interference." A reference to cases in other jurisdictions may be found in 28 C.J.S. 736.
The presumption to be drawn from the user is ordinarily that stated in Clement v. Bettle, but the circumstances of the particular case may lead to a different presumption. If Mrs. Peltz had had a garden on her vacant lot and, through the garden, had left open a way for Weber's wagon and automobile, this would have been an indication that his user was adverse, since the existence of the way through the garden would have interfered with Mrs. Peltz and been contrary to *Page 548 
her interest. Or had Mr. Weber paved the way, or otherwise improved it, so indicating an expectation that he could continue to use the way for an indefinite period, this would have pointed to a claim of right on his part. But nothing of the sort is disclosed by the proofs. Mrs. Peltz had long permitted anyone to cross her vacant land who desired to do so. She allowed Mr. Weber to keep his wagon on her lot whenever he chose. The two families were close friends. Mrs. Peltz, and later the defendant, were in nowise inconvenienced by the Webers. There is no direct proof of any claim of right by them until last spring, or that their user was adverse to the owners of No. 327. I am satisfied that they enjoyed the way by permission and did not claim it as a right. The bill will be dismissed.